## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C. and<br>SLING TV L.L.C., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHANNEL WALA LLC, | ) | Civil Case No. _____ |
| PARSHVA DISTRIBUTOR LLC, | ) | |
| ABHISHEK SHAH, | ) | |
| KHUSHALI SHAH, and | ) | |
| NILESHKUMAR "NEEL" SHAH, | ) | |
| individually and together d/b/a | ) | |
| Channel Wala and Doordarshan, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' COMPLAINT

Plaintiffs DISH Network L.L.C. and Sling TV L.L.C. file this action against

Defendants Channel Wala LLC, Parshva Distributor LLC, Abhishek Shah, Khushali

Shah, and Nileshkumar "Neel" Shah, individually and together doing business as

Channel Wala and Doordarshan, for violations of the anti-trafficking provisions of

the Digital Millennium Copyright Act ("DMCA") and trademark infringement under

the Lanham Act.  Defendants provide and profit from the sale of set-top boxes and

illicit streaming services that capture and retransmit Plaintiffs' television

programming, without authorization, by circumventing Plaintiffs' security

measures, and use Plaintiffs' trademarks in an advertising scheme to deceive consumers for purposes of Defendants' financial gain.

## PARTIES

1.      Plaintiff DISH Network L.L.C. ("DISH") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

2.      Plaintiff Sling TV L.L.C. ("Sling") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

3.      Defendant Channel Wala LLC is a Georgia limited liability company having its principal place of business in Lawrenceville, Georgia.

4.      Defendant Khushali Shah is an individual residing in Buford, Georgia. Khushali Shah is the principal officer and director of Channel Wala LLC.  Upon information and belief, Khushali Shah operates Channel Wala LLC from her residence and makes the day-to-day decisions regarding the operation of the business, which she uses to process payments in connection with the set-top boxes and infringing services at issue.

5.      Defendant Parshva Distributor LLC ("Parshva Distributor") is a Georgia limited liability company having its principal place of business in Buford, Georgia.

6.      Defendant Abhishek Shah is an individual residing in Buford, Georgia. Abhishek Shah is the principal officer and director of Parshva Distributor LLC.  Upon information and belief, Abhishek Shah operates Parshva Distributor from his

residence and makes the day-to-day decisions regarding the operation of the business, which he uses to process payments in connection with the set-top boxes and infringing services at issue.

7.      Defendant Nileshkumar "Neel" Shah ("Neel Shah") is an individual residing in Buford, Georgia.

## JURISDICTION & VENUE

8.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims for violations of the DMCA, 17 U.S.C. § 1201 and the Lanham Act, 15 U.S.C. §§ 1114, 1125.

9.      Defendants are subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Defendants reside in Georgia and, through their wrongful conduct identified herein, Defendants purposefully directed their conduct towards and purposefully availed themselves of the privileges of conducting business in Georgia, causing injury to Plaintiffs in Georgia.

10.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants reside in this judicial district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## PLAINTIFFS' PROGRAMMING AND TRADEMARKS

11.     Plaintiffs provide television programming to millions of authorized, fee-paying subscribers of their Sling TV and DISH Anywhere services in the United

States using the internet. Plaintiffs acquire the distribution rights to provide the programming pursuant to license agreements between DISH and various rights holders. The programming consists of live channels and on demand content and is subject to copyright protections. Plaintiffs' live channels, whether intended for Sling TV subscribers or DISH Anywhere subscribers, are transmitted over the internet using the same Sling streaming platform ("Channels").

12.    Plaintiffs implement digital rights management ("DRM") technology, with the rights holders' consent, to protect the Channels from unauthorized access, copying and retransmission. Each DRM technology uses a key-based subscriber authentication and encryption-decryption process to make Plaintiffs' Channels accessible to only authorized subscribers that purchase access to the Channels from Plaintiffs and restricts unauthorized access to, copying, and retransmission of the Channels.

13.    DISH owns the following marks that are registered with the United States Patent and Trademark Office ("USPTO"):

| Mark | Registration Number | Registration Date | Goods/Services |
|---|---|---|---|
|  | 4217919 | October 2, 2012 | Installation services for satellite receivers |

| | | | |
|---|---|---|---|
| **dish** | 4339514 | May 21, 2013 | Communications equipment, including receivers, antennae, and software |
| **dish** | 4339515 | May 21, 2013 | Telecommunication services, including the satellite transmission of television services and television broadcasting via the internet |
| DISH | 3440594 | June 3, 2008 | Communications equipment including receivers, antennae, and software<br><br>Telecommunication services, including the satellite transmission of television services |
| DISH | 4206082 | September 11, 2012 | Installation services for satellite receivers |
| DISH NETWORK | 3264300 | July 17, 2007 | Communications equipment including receivers, antennae, and software<br><br>Telecommunication services, including the satellite transmission of television services |

The foregoing are collectively referred to as the "DISH Marks."

14.     DISH used the DISH Marks continuously in commerce for a number of years in the course of providing its television services and equipment in the United States.  DISH has devoted substantial time, effort, and resources to the development and extensive promotion of its television services and equipment under the DISH Marks.  As a result, the DISH Marks acquired significant recognition in the

marketplace and embody the substantial and valuable goodwill of DISH.

15.    The registrations for the DISH Marks are valid and subsisting and constitute presumptive evidence of their validity and ownership by DISH.  The registration of the DISH Marks constitutes constructive notice to Defendants of DISH's ownership and exclusive rights in the DISH Marks.  Upon information and belief, Defendants are aware of the popularity and fame of the DISH Marks and the goodwill associated with the DISH Marks.

16.    Sling owns the following marks that are registered with the USPTO:

| Mark | Registration # | Registration Date | Goods/Services |
|---|---|---|---|
| sling | 4953192 | May 3, 2016 | Broadcasting, webcasting, streaming, and transmission of audio, video, and subscription television via the internet |
| sling | 5438579 | April 3, 2018 | Software and hardware for transmitting and streaming audio and video |
| sling | 6464093 | August 24, 2021 | Software and hardware for transmitting and streaming audio, video, and pay-television services<br><br>Broadcasting, webcasting, streaming, and transmission of audio, video, and subscription television via the internet<br><br>Providing movies, television programs, and entertainment |

| | | | services via video-on-demand and the internet

Providing temporary use of software for streaming and viewing movies, television programs, and music |
|---|---|---|---|
| SLING TV | 5481327 | May 29, 2018 | Software for transmitting and streaming audio and video |
| SLING TV | 5481328 | May 29, 2018 | Broadcasting, webcasting, streaming, and transmission of audio, video, and subscription television via the internet |
| SLING TV | 5481329 | May 29, 2018 | Providing temporary use of software for streaming and viewing movies, television programs, and music |

The foregoing are collectively referred to as the "Sling Marks."

17.     Sling used the Sling Marks continuously in commerce for a number of years in the course of providing its television services and equipment in the United States.  Sling has devoted substantial time, effort, and resources to the development and extensive promotion of its television services and equipment under the Sling Marks.   As a result, the Sling Marks acquired significant recognition in the marketplace and embody the substantial and valuable goodwill of Sling.

18.     The registrations for the Sling Marks are valid and subsisting and constitute presumptive evidence of their validity and ownership by Sling.   The registration of the Sling Marks constitutes constructive notice to Defendants of Sling's ownership and exclusive rights in the Sling Marks.  Upon information and

belief, Defendants are aware of the popularity and fame of the Sling Marks and the goodwill associated with the Sling Marks.

## DEFENDANTS' REBROADCASTING AND INFRINGEMENT SCHEME

19.    Defendants trafficked in the set-top boxes ("STBs") and internet streaming television services ("Services") through their websites located at Channelwala.com, Thegreatiptvsub.com, and Tvplususa.com ("Websites") and through Amazon stores including Channel Wala, Fast_Ships_From_USA ("Fast Ships"), and MAG Box Store ("MAG Box," and collectively with Channel Wala and Fast Ships the "Amazon Stores").  Amazon identified Channel Wala LLC as the seller of the Channel Wala store and Neel Shah as the seller of the Fast Ships and MAG Box stores.

20.    Undercover purchases of the STBs and Services made from the Websites and Amazon Stores show that Defendants operated the Websites and Amazon Stores and processed the payments.  The payments for the STBs and Services purchased from Defendants were made via Amazon, PayPal to Channel Wala at support@channelwala.com, Zelle to Parshva Distributor at payme698@gmail.com, and CashApp to Khushali Shah at $bestiptv1, Abhishek Shah at $bestiptv, and Defendants at $tvplususa and $iptv420.

21.    Defendants sold the STBs on Channelwala.com and the Amazon Stores for a cost of approximately $80 to $123, depending upon the hardware selected by

the user.   The STBs included stickers on the boxes directing users to contact Defendants at WhatsApp numbers for free Services.   The following are photos of stickers on the boxes of the STBs purchased from Defendants through Channelwala.com and Fast Ships:




Sticker on STB from Channelwala.com        Sticker on STB from Fast Ships

22.    An  investigator  purchased  a  STB  from  Defendants  through Channelwala.com.  Upon receipt of the STB, the investigator messaged Defendants at the WhatsApp number on the sticker on the box and requested a free trial of the Services.  The following WhatsApp messages show that Defendants responded with instructions for setting up a free trial of the Services on the STB.



23.     An investigator purchased a STB from Defendants through the Fast

Ships store.  Upon receipt of the STB, the investigator messaged Defendants at the

WhatsApp number on the sticker on the box and requested a free trial of the Services.

Defendants' response is set forth in the following WhatsApp messages directing the

investigator to message them on "our new number" and then Defendants activated a

free trial of the Services on the STB and provided the investigator with instructions

for setting up the STB.



24.   Defendants sold the Services to users through the WhatsApp numbers

on the stickers, Thegreatiptvsub.com, and Tvplususa.com for a cost of

approximately $7 to $20 per month.

25.   An investigator visited Thegreatiptvsub.com and purchased a one-

month subscription to the Services from Defendants.  Defendants sent the following

email to the investigator confirming activation of the Services on the STB and providing the instructions for setting up the STB.[1]

**From:** support@thegreatiptvsub.com
**Date:** ████████████████████
**To:** ██████████
**Subject: Re: WHMCS New Order Notification**

Thank you for your order.

You box is activated now.

Please follow below YouTube video and step to setup your box. DO NOT USE url shows in video, it's for example only. Use url provided in this email

Watch this video - https://youtu.be/iLGkEcYX86c

In portal 1 name put - TV

In portal 1 URL put - http://mag.ottcdn.net/c/

You might need to restart box 1-2 times if you get login/authentication screen after all steps and it will go away.

Adult pin - 1234 or 0000

Also, please give box delivery feedback with 5 stars on amazon link. We appreciate it sir.

Delivery feedback - https://www.amazon.com/feedback/

Thank you

26.    The following WhatsApp message from Defendants explains Defendants' sticker on the STB purchased through the Fast Ships store offering a "6 Month Free Subscription" where they "help you setup box and you use for 1 month free and try it" and then "after 1 month, we offer $120 for 1 year plan and you will get 5 month free with it. So you will get total 17 month for $120."

---

[1] The investigator's identifying information is redacted.

12



27.    An investigator purchased from Defendants the offered one year subscription to the Services plus five months free for $120.   The following WhatsApp messages from Defendants confirm that they added 17 months of the Services to the STB purchased through the Fast Ships store after receipt of $120.



28.     Investigators purchased STBs from Defendants through Channelwala.com and the MAG Box store.  The STBs included a sticker on the boxes directing the investigator to Tvplususa.com for setup help and to purchase the Services for $6.99 per month.  The following are photos of the stickers on the boxes of these STBs purchased from Defendants through Channelwala.com and the MAG Box store.



Sticker on STB from Channelwala.com



Sticker on STB from the MAG Box store

14

29.     An investigator visited Tvplususa.com and purchased a one-month subscription to the Services from Defendants.

30.     Defendants market the Services by distributing flyers and business cards in Indian grocery, liquor, and retail stores, gas stations, and other locations in the Atlanta metropolitan area.  The following photo of Defendants' flyers and business cards show that they promote the STBs and Services with DISH Marks and Sling Marks, claim to be an "Authorized Retailer" of DISH and Sling, and offer "1 MONTH FREE," "WATCH FOR $7/mo," and "FREE SLING TV SET TOP BOX."



31.    Defendants provided invoices to purchasers of STBs and Services that included DISH Marks and Sling Marks.  The following is a redacted example of one of Defendants' invoices including DISH Marks and Sling Marks and claim to be an "Authorized Retailer" of DISH and Sling.



**The Best Choice for your TV Needs since 2019**
770.580.3337
channelwala.com

**Invoice for order 135408**

Order Date: **December 27** 2021

| Billing Address | Ship Address | Ship Method |
|---|---|---|
| Ali A Abedi<br>3140 Spencerville Rd<br>Burtonsville, MD 20866<br>USA | Ali A Abedi<br>3140 Spencerville Rd<br>Burtonsville, MD 20866<br>USA | UPS Ground |

| Set Top Box | Product | Quantity | Price |
|---|---|---|---|
| Dish Tv<br>Dish/Dishman MAG 524W3 | Dish Network IPTV Package<br>Plan:     1 Year Subscription | 1 | $300.00 |
| | | Subtotal: | $ 300.00 |
| | | Shipping: | Free shipping (5-7 days): $ 0 |
| | | Tax: | $  0.00 |
| | | Payment method: | Zelle |
| | | Total: | $ 300.00 |

**Customer Details**

- Email: dinzeyes5@gmail.com
- Phone: 3012283185
- Service Expiration Date: December 27, 2022





16

32.     Defendants also promoted the STBs and Services through Facebook as Doordarshan Iptv, Reddit as iptv_doordarshan, and Walmart as the Channel Wala LLC store.

33.     Plaintiffs' Channels are being transmitted without authorization to users that purchase the STBs and Services from Defendants.  Identifiers that are unique to Plaintiffs' internet transmissions of the Channels were detected when conducting a technical analysis of the corresponding channels on the Services, thereby confirming that channels transmitted on the Services originated from Plaintiffs.  Periodic monitoring conducted on a sampling of channels on the Services showed numerous instances where Plaintiffs' Channels were being retransmitted to users of the Services without Plaintiffs' authorization.   Plaintiffs' internet transmissions of the Plaintiffs' Channels on the Services include the following by way of example: BabyTV, Boomerang, TeenNick, Gusto, CNN, BBC World News, GAC Family, The Cowboy Channel, History, AMC +, FXX, Laff, Pursuit, VICE, Starz West, Showtime, Showtime Next, The Longhorn Network, and the NBA channel for the Milwaukee Bucks, Chicago Bulls, Utah Jazz, Cleveland Cavaliers, Denver Nuggets, and Detroit Pistons.

34.     Sling Marks were also observed on several channels transmitted on the Services, further demonstrating that Plaintiffs' Channels were used to seed the Services with unauthorized content.  For example, the following screenshots of the

landing page for the NBA channel for the Chicago Bulls and Utah Jazz were captured from the Services, including the Sling Marks. The NBA channels on the Sling service display these landing pages rather than scheduled programming when no NBA game is being broadcast.

 

NBA channel for Chicago Bulls from the Services    NBA channel for Utah Jazz from the Services

35.     Upon information and belief, Plaintiffs' Channels are retransmitted to users of the Services by circumventing the Widevine DRM. The Widevine DRM controls access to Plaintiffs' Channels by requiring Plaintiffs' subscriber to present a valid digital authentication key and license request to Sling's Widevine DRM server to obtain the channel decryption key necessary to unlock a specific Channel. The channel decryption key is provided to Plaintiffs' subscriber in an encrypted communication and upon receipt is not exposed to the subscriber but rather is secured in the content decryption module of the subscriber's Widevine supported device. In addition, the Widevine DRM protects against copying of Plaintiffs' Channels in the ordinary course of its operation by requiring that the encrypted

18

audio-visual segments that make up a Channel are unlocked using the channel decryption key and complied to form the Channel within the confines of the content decryption module, such that Plaintiffs' subscribers can only view the Channel and not retransmit the Channel.

36.    The Widevine DRM and the protection it affords is circumvented using a specially developed computer program that emulates the behavior of a reverse engineered hardware device.  The computer program tricks Sling's Widevine DRM server to grant access and provide a channel decryption key by making the server believe the request originated from a legitimate Widevine supported device that would keep the channel decryption key secured (though in reality the request came from the computer program mimicking the reverse engineered hardware).  The computer program uses the channel decryption key to unlock the encrypted audio-visual segments that make up the Channel and then compiles the segments to form an unencrypted Channel that is capable of being copied and retransmitted (as opposed to being merely viewed).  The unencrypted Channel can be uploaded to a server outside of the Sling platform and retransmitted to any number of users that can receive the Channel without purchasing a legitimate subscription from Plaintiffs.

37.    Upon information and belief, users of the Services are able to receive Plaintiffs' Channels because the Widevine DRM used to protect the Plaintiffs' Channels from unauthorized access and copying is being circumvented as described

above.  Additional content provided on the Services is believed to be acquired from other legitimate pay-television providers that use the Widevine DRM through this process of circumvention, which enables the Services to offer thousands of channels and tens of thousands of on-demand programs at a small fraction of the cost charged by legitimate providers that pay to license their content such as Plaintiffs.

38.     Defendants were notified that the Services violate federal laws and asked to cease and desist from providing the Services as early as June 6, 2023, but Defendants failed to comply and the Services have continued to operate.  Abhishek Shah forwarded an image of Plaintiffs' cease and desist letter to numerous resellers that purchase the STBs and Services from Defendants stating he has made more than $20 million, "continue business as usual," "DISH can't stop us," "I am putting down my website but it does not impact you in any way," and "keep buying [subscriptions to the Services] from me as you have been."

## CLAIMS FOR RELIEF

### COUNT I
### Violations of the DMCA, 17 U.S.C. § 1201(a)(2)

39.     Plaintiffs repeat and reallege the allegations in paragraphs 1-38.

40.     Plaintiffs use DRM technology to effectively control access to their Channels that include works protected under the Copyright Act.  Plaintiffs are

authorized by the copyright owners to control access to the Channels and implement the DRM technology with their consent.

41.   Plaintiffs' DRM technology is circumvented to gain access to Plaintiffs' Channels that are retransmitted without authorization to users of the Services.   Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Services.

42.   The Services, or at least the component or part of the Services that involves gaining unauthorized access to Plaintiffs' Channels, are primarily designed and produced for the purpose of circumventing the DRM technology that Plaintiffs implement and has no commercially significant purpose or use other than circumventing such DRM technology.

43.   Defendants violate 17 U.S.C. § 1201(a)(2) by manufacturing, offering to the public, providing, or otherwise trafficking in the Services.  Each free trial and sale of the Services constitutes a separate violation of 17 U.S.C. § 1201(a)(2).

44.   Defendants' actions violating 17 U.S.C. § 1201(a)(2) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

45.   Defendants' violations of 17 U.S.C. § 1201(a)(2) were willful. Such violations have damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(a)(2).

## COUNT II
## Violations of the DMCA, 17 U.S.C. § 1201(b)(1)

46.     Plaintiffs repeat and reallege the allegations in paragraphs 1-38.

47.     Plaintiffs use DRM technology to effectively control copying of their Channels that include works protected under the Copyright Act.  Plaintiffs are authorized by the copyright owners to control copying of the Channels, including distribution and public performance through acts of retransmission, and implement the DRM technology with their consent.

48.     Plaintiffs' Channels are retransmitted without authorization to users of the Services by circumventing Plaintiffs' DRM technology.  Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Services.

49.     The Services, or at least the component or part of the Services involving unauthorized retransmission of Plaintiffs' Channels to users of the Services, are primarily designed and produced for the purpose of circumventing the protection afforded by the DRM technology that Plaintiffs implement and has no commercially significant purpose or use other than circumventing such protection.

50.     Defendants violate 17 U.S.C. § 1201(b)(1) by manufacturing, offering to the public, providing, or otherwise trafficking in the Services.  Each free trial and sale of the Services constitutes a separate violation of 17 U.S.C. § 1201(b)(1).

51.     Defendants' actions violating 17 U.S.C. § 1201(b)(1) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

52.     Defendants' violations of 17 U.S.C. § 1201(b)(1) were willful. Such violations have damaged Plaintiffs in an amount to be proven at trial.   Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(b)(1).

## COUNT III
## Trademark Infringement Under 15 U.S.C. § 1114(1)

53.     Plaintiffs repeat and reallege the allegations in paragraphs 1-38.

54.     DISH owns the DISH Marks that are registered with the USPTO having registration numbers 4217919, 4339514, 4339515, 3440594, 4206082, and 3264300.  DISH uses the DISH Marks in the course of providing its television services and equipment in the United States.

55.     Sling owns the Sling Marks that are registered with the USPTO having registration numbers 4953192, 5438579, 6464093, 5481327, 5481328, and 5481329.  Sling uses the Sling Marks in the course of providing its television services and equipment in the United States.

56.     Defendants use reproductions, counterfeits, copies, or colorable imitations of the DISH Marks and Sling Marks in commerce, and without

authorization, in connection with their sale, offering for sale, distribution, and advertising of the STBs and Services.

57.     Defendants' unauthorized use of the DISH Marks and Sling Marks caused and will likely continue to cause confusion, mistake, or deception among consumers as to whether Defendants are affiliated, connected, or associated with Plaintiffs, and whether Defendants' STBs, Services, and the channels distributed on the Services originate from, are sponsored by, or approved by Plaintiffs, in violation of the Lanham Act section 32, 15 U.S.C. § 1114(1).

58.     Defendants' actions are willful, intentional, purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

59.     Unless enjoined by the Court, Defendants will continue to engage in actions causing substantial and irreparable injury to Plaintiffs that includes damage to their reputation, goodwill, and lost subscribers for which there is no adequate remedy at law.

## **COUNT IV**
### **Unfair Competition and False Advertising Under 15 U.S.C. § 1125(a)**

60.     Plaintiffs repeat and reallege the allegations in paragraphs 1-38.

61.     DISH owns the DISH Marks that are registered with the USPTO having registration numbers 4217919, 4339514, 4339515, 3440594, 4206082, and

3264300.  DISH uses the DISH Marks in the course of providing its television services and equipment in the United States.

62.     Sling owns the Sling Marks that are registered with the USPTO having registration numbers 4953192, 5438579, 6464093, 5481327, 5481328, and 5481329.  Sling uses the Sling Marks in the course of providing its television services and equipment in the United States.

63.     Defendants use reproductions, counterfeits, copies, or colorable imitations of the DISH Marks and Sling Marks in commerce, and without authorization, in connection with their STBs and Services.

64.     Defendants' unauthorized use of the DISH Marks and Sling Marks caused or is likely to cause confusion, mistake, or deception among consumers as to whether Defendants are affiliated, connected, or associated with Plaintiffs, and whether Defendants' STBs and Services are sponsored or approved by Plaintiffs, in violation of the Lanham Act section 43(a), 15 U.S.C. § 1125(a)(1)(A).

65.     Defendants' actions are willful, intentional, purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

66.     Unless enjoined by the Court, Defendants will continue to engage in actions causing substantial and irreparable injury to Plaintiffs that includes damage to their reputation and goodwill and lost subscribers for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

Plaintiffs request a judgment against Defendants as follows:

A.      For a permanent injunction, as authorized by Fed. R. Civ. P. 65, 17 U.S.C. § 1203(b)(1), and 15 U.S.C. § 1116(a), that prohibits Defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with them that receives actual notice of the order, from:

1.      manufacturing, offering to the public, providing, or otherwise trafficking in the STBs, Services, or any other technology, product, service, device, component, or part thereof that:

a.      is primarily designed or produced for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

b.      has at best only limited commercially significant purpose or use other than circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work; or

c.      is marketed for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

2.      using in any manner the DISH Marks or Sling Marks, any variation thereof, or otherwise infringing Plaintiffs' trademarks either directly, contributorily, or vicariously; and

3.      representing to the public in any manner that Defendants are affiliated with, endorsed by, or otherwise work on behalf of Plaintiffs;

B.      For an order transferring all domain names and websites that Defendants used in connection with the Services to Plaintiffs;

C.      For an order awarding the greater of: (1) Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations identified in Count I and Count II, or (2) statutory damages up to $2,500 for each violation identified in Count I or Court II, pursuant to 17 U.S.C. § 1203(c)(2) and (c)(3)(A);

D.      For an order awarding the greater of: (1) Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations identified in Count III, or (2) statutory damages up to $2,000,000 per infringing mark per type of product or service offered or provided by Defendants, pursuant to 15 U.S.C. § 1117(a) and (c);

E.      For an order awarding Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations identified in Count IV, pursuant to 15 U.S.C. § 1117(a);

F.      For treble damages or profits under 15 U.S.C. § 1117(a)-(b);

27

G.      For an order directing Defendants to deliver for destruction all products, packaging, and advertising materials that contain Plaintiffs' trademarks, pursuant to 15 U.S.C. § 1118;

H.      For an order awarding Plaintiffs their attorneys' fees and costs under 17 U.S.C. § 1203(b)(4)-(5) and 15 U.S.C. § 1117(a)-(b);

I.      For an accounting of all profits and other benefits that Defendants received from the wrongful conduct identified in this complaint;

J.      For pre and post-judgment interest on all damages awarded by the Court, from the earliest date permitted by law at the maximum rate permitted by law; and

K.      For such additional relief as the Court deems just and equitable.


Dated:  January 24, 2024            Respectfully submitted,

                                    By: /s/ Adam M. Sparks
                                    Adam M. Sparks (Ga. Bar No. 341578)
                                    sparks@khlawfirm.com
                                    Anré D. Washington (Ga. Bar No. 35162)
                                    washington@khlawfirm.com
                                    **KREVOLIN & HORST, LLC**
                                    One Atlantic Center
                                    1201 West Peachtree Street, NW
                                    Suite 3250
                                    Atlanta, GA 30309
                                    Telephone: (404) 888-9700
                                    Facsimile: (404) 888-9577

Stephen M. Ferguson (*pro hac vice* to be filed)
stephen.ferguson@hnbllc.com
**HAGAN NOLL & BOYLE LLC**
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

*Attorneys for Plaintiffs DISH Network L.L.C.
and Sling TV L.L.C.*